*619 OPINION OF THE COURT
Francis A. Affronti, J.
This court is confronted with the compelling question of whether retroactive application of the Sex Offender Registration Act (Correction Law § 168 et seq. [SORA]), New York State’s version of "Megan’s Law”, inflicts greater or harsher punishment upon sex offenders than the law which was applicable "to the crime, when committed” (Calder v Bull, 3 Dali [3 US] 386, 390 [1798]).
Having been released to parole supervision in April 1996, following their incarceration resulting from separate convictions for sexual offenses,[1] defendants individually appeared before this court, pursuant to Correction Law § 168-n, to obtain judicial determinations as to the level of notification or classification applicable to them.
Prior to this court’s assessment of their risk levels, defendant Afrika, by notice of motion dated June 24, 1996, and defendant DiSalvo, by notice of motion dated July 18, 1996, challenged the constitutionality of SORA. These motions, argued within two days of each other, have now been consolidated for purposes of this decision because they raise identical legal issues.[2] Supported by a brief affirmation of an Assistant Public Defender, appearing as counsel for both defendants, and relying wholly upon Judge Denny Chin’s decision in Doe v Pataki (919 F Supp 691 [SD NY 1996]), each defendant maintains that, as it applies to him, SORA is unconstitutional in that it violates the Ex Post Facto Clause of the United States Constitution (US Const, art I, § 10). The Attorney-General, in opposition, while conceding the Act’s retrospectivity, asserts that it does not implicate the Ex Post Facto Clause because the statute is remedial and not punitive.
Doe v Pataki (supra) is the first and, to date, the only reported decision which addresses the constitutionality of *620 SORA and, although adjudicating a question of Federal constitutional law, it is not binding on this court (see, People v Kin Kan, 78 NY2d 54, 60; Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506; People v Barber, 175 AD2d 560). Since this court’s analysis of existing precedent leads to a conclusion contrary to that enunciated in Doe v Pataki (supra), a comprehensive decision is imperative.
The salient provisions of the statute, as it pertains to defendants’ ex post facto claims, must initially be summarized. The Act requires those individuals convicted of designated offenses, principally sex offenses, to register with the Division of Criminal Justice Services (DCJS) 10 days after their discharge from prison, or their release or parole (Correction Law § 168-f). Verification by the sex offenders of their addresses and any relocation by them is required for at least 10 years unless the court grants relief from the registration requirement (Correction Law §§ 168-f, 168-h, 168-o). A sex offender’s failure to register is punishable as a misdemeanor for the first offense with any subsequent failure to do so constituting a class D felony (Correction Law § 168-t). Additionally, any failure to register may constitute necessary grounds for a parole revocation (id.).
DCJS is mandated to create a file for each registered individual comprised of the sex offender’s name, aliases, date of birth, physical description, driver’s license number, photograph, fingerprints and home address and/or expected place of domicile. A description of the offense, date of conviction and sentence is also included in each file (Correction Law § 168-b [1]). The accumulated sex offender data is maintained by DCJS in a central registry subject to dissemination to law enforcement agencies and other entities in accordance with the notification provisions delineated in the Act. The extent or degree of permissible notification is a function of the risk level of a repeat offense ascribed to a particular sex offender. In this regard, three levels of risk and notification, denoted as low (level one), moderate (level two), and high (level three), are recognized by the law (Correction Law § 168-Z).
Although notification to certain local law enforcement agencies is mandated for all sex offenders, public or community notification is only authorized for those sex offenders who are classified as attaining a level two or a level three risk assessment (id.). A level two designation authorizes law enforcement agencies to disseminate to "any entity with vulnerable populations related to the nature of the offense” information about the sex offender, including his "approximate address based on *621 * * * zip code,” a photograph of the sex offender, as well as information relative to the sex offense for which he was convicted (Correction Law § 168-Z [6] [b]). As regards a level three sex offender, the same information is subject to release to that entity having a vulnerable population in addition to which said entity may also be apprised of the offender’s exact address (Correction Law § 168-Z [6] [c]). In addition, further circulation of the information received by the contacted entity is permissible. Moreover, data concerning a level three sex offender is contained in a subdirectory distributed to local police departments and accessible for public inspection (Correction Law § 168-Z [6] [c]; § 168-q). Another source of information regarding any registered sex offender is available through a "900” number that DCJS is mandated to operate (Correction Law § 168-p).
Article 6-C of the Correction Law, enacted on July 25, 1995, and effective January 21, 1996, is applicable not only to sex offenders sentenced after the latter date, but also to those incarcerated or on probation or parole on that date.
In scrutinizing SORA, this court must abide by the fundamental precept that legislative enactments are imbued with a strong presumption of constitutionality (see, New York State Club Assn. v City of New York, 487 US 1, 17; Hope v Perales, 83 NY2d 563, 574; People v Scalza, 76 NY2d 604, 607). Consequently, as the antagonists of the statute, defendants herein bear the heavy and formidable burden of establishing its unconstitutionality beyond a reasonable doubt (see, Hope v Perales, supra, at 574; People v Scalza, supra; People v Pagnotta, 25 NY2d 333, 337; Penn Adv. v City of Buffalo, 204 AD2d 1012; see also, Flemming v Nestor, 363 US 603, 617).
Article I, § 10 of the United States Constitution forbids the States from enacting any "ex post facto law.” This admonition has been interpreted by the United States Supreme Court as proscribing Legislatures from retroactively altering the definition of crimes or increasing the punishment for criminal acts (see, California Dept. of Corrections v Morales, 514 US —, —, 115 S Ct 1597, 1601; Collins v Youngblood, 497 US 37, 43; Hong Ki Lee v Governor of State of N. Y, 87 F3d 55 [2d Cir]). There being no change in the definition of the defendants’ crimes, the type of law at issue here is one that inflicts greater punishment for past crimes. More succinctly stated, the question posed is whether SORA is "intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial” (United States v One Assortment of 89 Firearms, 465 US 354, *622 362; see also, United States v Ursery, 518 US —, 116 S Ct 2135; Department of Revenue of Montana v Kurth Ranch, 511 US 781).
Therefore, the first line of inquiry is a determination of whether our Legislature intended the statute to be punitive or remedial in nature (see, United States v Ursery, supra, 518 US, at —, 116 S Ct, at 2147; W.P. v Poritz, 931 F Supp 1199 [D NJ 1996]). In relevant part, the legislative statement of purpose and findings reads as follows:
"The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies’ efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders * * *
"Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community * * *
"[T]he legislature finds that releasing information about sex offenders to law enforcement agencies and, under certain circumstances, providing access to limited information about certain sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.
"Therefore, this state’s policy * * * is to assist local law enforcement agencies’ efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about certain sex offenders to the public as provided in this act.” (L 1995, ch 192, §1.)
The aforesaid preamble, in this court’s opinion, evinces an unmistakable intent to promote public safety and enhance law enforcement efforts by providing for the accumulation and dissemination of pertinent information regarding dangerous sex *623 offenders. Nevertheless, the Legislature’s proclamation as to its remedial intent is not dispositive, as noble rhetoric or a "civil label” may mask a lurking punitive purpose (see, United States v Halper, 490 US 435, 447; Allen v Illinois, 478 US 364, 369).
"The overall design * * * of the statute must bear out the non-punitive intent” (United States v Huss, 7 F3d 1444, 1448 [9th Cir], citing United States v Ward, 448 US 242, 248-249). Therefore, it is incumbent upon this Court to delve more deeply into the act and ferret out any secret agenda that may be concealed therein. Upon a thorough review of the statute, it is hereby concluded that it is not excessive in its reach or burdens, but conversely, is a measured response to a perceived danger. Additionally, the notification provisions included therein are carefully graduated so as to more closely fit and conform to those evaluated as presenting a greater propensity to repeat or escalate their criminal transgressions. Notable as well are those provisions which sanction unauthorized release of information and misuse of the "900” number (Correction Law §§ 168-u, 168-p). Therefore, the Act is clearly constructed in a fashion consonant with the Legislature’s pronounced remedial design.
The second aspect of the court’s inquiry is to determine if the Act is "so punitive in form and effect” as to cause it to be considered punishment, despite the Legislature’s evident intent to the contrary (United States v Ursery, supra, 518 US, at —, 116 S Ct, at 2148). " ' "Only the clearest proof’ ’ ” that the Act is, in fact, punitive, will suffice to transform what was intended as a civil remedy into a criminal penalty (United States v One Assortment of 89 Firearms, supra, at 365; Flemming v Nestor, supra, at 617; see also, United States v Ursery, supra, 518 US, at —, 116 S Ct, at 2142; Rex Trailer Co. v United States, 350 US 148, 154). The examination for punitive effect will be directed primarily at the notification aspect of the law, since registration and classification, standing alone, have relatively little impact on the sex offender. Indeed, statutes requiring registration of sex offenders have repeatedly withstood constitutional challenges (see, e.g., Artway v Attorney Gen. of State of N. J., 81 F3d 1235; Snyder v State, 912 P2d 1127 [Wyo]; State v Ward, 123 Wash 2d 488, 869 P2d 1062; State v Noble, 171 Ariz 171, 829 P2d 1217; State v Costello, 138 NH 587, 643 A2d 531; State v Manning, 532 NW2d 244 [Minn Ct App]).
In Collins v Youngblood (497 US 37, 50, supra) the Court elucidated the scope of the Ex Post Facto Clause by declaring *624 that it does not bar any law which simply " 'alter[s] the situation of a party to his disadvantage’ Moreover, the recent opinion in Ursery (518 US —, 116 S Ct 2135, supra), decided June 25, 1996, further contributed to the understanding of what is considered to be remedial, as opposed to punitive legislation, by repudiating the notion, engendered by its earlier decision in United States v Halper (supra, at 448), that a statute constitutes punishment if it has any deterrent effect. The Court noted that such a rule would cause "virtually every sanction [to be] declared [as] punishment: it is hard to imagine a sanction that has no punitive aspect whatsoever” (United States v Ursery, supra, 518 US, at —, 116 S Ct, at 2146, n 2; see also, Opn of Justices to Senate, 423 Mass 1201, 668 NE2d 738).
The decision in Doe v Pataki (919 F Supp 691, supra) predated Ursery (supra) and labored under the crucial misconception that any deterrent effect stamped SORA as punishment. In his decision, Judge Chin listed five attributes of the public notification component which expressly persuaded him that the statute was punitive. Specifically, he determined that the Act was punitive because it: (1) has traditionally been viewed as punitive; (2) serves a deterrent purpose; (3) "places a public stigma” on sex offenders; (4) has provisions that are classic indicia of a punitive scheme; and (5) has indirectly caused harsh results. (Doe v Pataki, supra, at 701.)
Without question, public disclosure of a person’s crime for the sole purpose of disgracing and humiliating the offender was once employed as a punitive measure (see, People v Letter-lough, 86 NY2d 259, 266, citing Brilliant, The Modern Day Scarlet Letter: A Critical Analysis of Modem Probation Conditions, 1989 Duke LJ 1357). These antecedents from bygone days do not dictate the conclusion that in this era, emanating from a very different context, public notification is necessarily punishment (see, Flemming v Nestor, 363 US 603, 616, supra [each case turns on its own "highly particularized context”]). Instead, the historical use of shaming as punishment serves to alert the court to that potential use. It is evident, however, that the Act "is not the product of a lust for retribution; it is a measured attempt to achieve remedial with attendant deterrent goals. The shaming punishments of colonial times were intended to and did visit society’s wrath directly upon the offender; Megan’s Law has different, protective purposes” (W.P. v Poritz, 931 F Supp 1199, 1217, supra).
With regard to the stigma and opprobrium that may result from the disclosure of an individual’s status as a sex offender, *625 it must be recalled that criminal convictions are matters of public record (see, Matter of Thompson v Weinstein, 150 AD2d 782). Furthermore, this court agrees with the conclusion reached by the New Jersey Supreme Court in Doe v Poritz (142 NJ 1, 43), wherein that court upheld the constitutionality of "Megan’s Law”, that "a statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: an intent to punish.”
The mere fact that the law is responsive to a person’s prior criminal conduct is insufficient to render it punitive (see, United States v Ursery, 518 US, at —, 116 S Ct, supra, at 2149), since our Legislature reasonably concluded, with regard to sexual offenders, that their past behavior is a strong predictor of future conduct, and accordingly, implemented appropriate measures to protect society.
"Not every change in a convicted person’s situation violates the Ex Post Facto Clause” (Rise v State, 59 F3d 1556, 1562 [9th Cir]). Our jurisprudence is replete with decisional law sustaining the imposition of new disabilities or requirements, some of which are severe, on those previously convicted of criminal acts where the legislation’s over-all design and effect is nonpunitive, that is, in furtherance of legitimate government objectives, other than mere retribution or deterrence (see, e.g., De Veau v Braisted, 363 US 144 [1960] [prohibited convicted felons from collecting union dues]; Hawker v New York, 170 US 189 [1898] [convicted felons disqualified from practicing medicine]; Dominique v Weld, 73 F3d 1156 [1st Cir] [work release privileges]; Rise v State, supra [collection of blood sample from felons for DNA data bank]; Gilbert v Peters, 55 F3d 237 [7th Cir] [blood specimen upon release, discharge or parole]; Bae v Shalala, 44 F3d 489 [debarment of former drug company executives due to felony conviction]; Martel v Fridovich, 14 F3d 1 [1st Cir] [treatment program’s revised rules for short-term release]; United States v Huss, 7 F3d 1444, supra [restricting felons from carrying firearms]; United States v Powell, 761 F2d 1227 [8th Cir] [admission to bail pending appeal]; Tremblay v Riley, 917 F Supp 195 [WD NY] [banning Pell Grant funds to prisoners]; People v Doe, 169 Mise 2d 29 [Nassau County Ct] [HIV testing of felons convicted of certain sex crimes]).
*626 "The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts. The question in each case [, however,] where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation” (De Veau v Braisted, supra, at 160). When judged by this standard, SORA unquestionably passes muster as a remedial law, since the burdens that are imposed were occasioned by bona fide governmental concerns regarding the peril presented to the public by known sexual predators who are at liberty. In conclusion, therefore, the defendants herein have failed to establish by the clearest proof that the Act is so punitive in its effect as to negate the legislative intention to establish a civil remedial mechanism.
Vigilance without vengeance, as SORA is constituted, against those who have proven to be threats to society does not embody punishment. It rationally follows that the Act does not contravene or run afoul of the Ex Post Facto Clause, and, therefore, in that respect, it is not unconstitutional. Accordingly, upon the above, the defendants’ motions are hereby denied in their entirety.

. Specifically, following a jury trial, Nache Afrika was convicted of rape in the first degree and sentenced on September 24, 1982 to an indeterminate term of imprisonment with the New York State Department of Correctional Services for a period of 5 to 15 years. Frank DiSalvo was convicted, on a plea of guilty, of sexual abuse in the first degree and sentenced on September 14, 1991 to an indeterminate term of imprisonment with the New York State Department of Correctional Services for a period of 21/3 to 7 years.

. Bench decisions were issued with reference to both motions to avoid any unnecessary delay, and also, the court proceeded with the "classification” of each defendant. However, given the extreme legal significance of the matters presented, a written decision was deemed necessary.