OPINION
Defendant-appellant, Dean Scott Lyttle, appeals his adjudication as a "sexual predator." The trial court adjudicated Lyttle pursuant to Amended Substitute House Bill 180 ("H.B. 180"), partially codified in R.C. Chapter 2950, which establishes a comprehensive sex offender registration and community notification program. Under his single assignment of error, Lyttle complains that because his classification as a sexual predator was triggered by convictions that predate the statute, the law violates the Ex Post Facto clause of the U.S. Constitution and the retroactive clause of the Ohio Constitution. This court now affirms Lyttle's classification as a sexual predator and, in doing so, holds that the sexual predator classification provision and attendant registration, address verification, and community notification requirements contained in the act (together, the "sexual predator law") violate neither the federal prohibition against ex post facto laws nor Ohio's prohibition against retroactive legislation.
 I. PROCEDURAL POSTURE
On January 31, 1992, the Butler County Court of Common Pleas convicted Lyttle of four counts of gross sexual imposition and sentenced him to four consecutive two-year prison terms.[1] On February 26, 1997, prior to Lyttle's scheduled release and in accordance with H.B. 180, the warden of the Pickaway Correctional Institution recommended that the trial court adjudicate Lyttle as a "sexual predator" or "habitual sex offender." See R.C.2950.09(C)(1). Following a hearing, the trial court determined by clear and convincing evidence that Lyttle is a "sexual predator." See R.C. 2950.09.
 II. OHIO'S STATUTORY SCHEME A. Sexual Predator Classification
H.B. 180, sometimes referred to as Ohio's "Megan's Law,"[2]
sets forth a procedure for classifying criminal offenders who have been convicted of and sentenced for a "sexually oriented offense."[3] See R.C. 2950.09. The classification provisions of the act became effective on January 1, 1997. The relevant provision here, R.C. 2950.09(C)(1), outlines classification procedures for offenders who were convicted and sentenced prior to the effective date of that section and who were still imprisoned in a state correctional institution when the section became effective. Under the law, a sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E).
Prior to the release of a sexual offender, the department of rehabilitation and correction must determine whether to recommend to the trial court that the offender be adjudicated as a sexual predator. R.C. 2950.09(C)(1).[4] The trial court is not bound by the department's recommendation; the trial court may, without a hearing, deny such a recommendation and determine that the offender is not a sexual predator. R.C. 2950.09(C)(2). The trial court, however, must conduct a hearing before it can determine that an offender is a sexual predator. Id. If the court schedules a sexual predator hearing, it must notify the offender and the applicable prosecutor's office, consider all relevant factors, and determine by clear and convincing evidence whether the offender is a sexual predator. Id.[5]
 B. Registration and Address Verification
Sexual offenders covered under the law, including sexual offenders classified as sexual predators, are subject to certain registration and reporting or verification requirements. These provisions, along with the notification provisions addressed below, became effective July 1, 1997. Sexual offenders must register with the sheriff in the county in which he or she resides. R.C. 2950.04.[6] Any sexual offender required to register under the act must provide the sheriff with written notice of any change of address, R.C. 2950.05, and must periodically verify his or her current address. R.C. 2950.06. An offender adjudicated as a sexual predator must verify his or her registration in person every ninety days. Id. An adjudicated sexual predator must comply with the registration and verification provisions for life, unless the adjudicating court subsequently determines that the offender is no longer a sexual predator. R.C. 2950.07(B)(1). Failure to comply with the registration and verification provisions is a crime. R.C.2950.99.
 C. Community Notification
When an individual is classified as a sexual predator, the sheriff with whom that offender has registered is required to notify certain persons and institutions in a "specified geographical notification area."[7] R.C. 2950.11. Persons entitled to notice include occupants of adjacent residences and other neighbors specified under the attorney general's rule making authority, the executive director of the applicable public children services agency, certain educational authorities, the administrators of any child day care center within the area, and specified law enforcement agencies within the notification area. See R.C. 2950.11(1)-(9). In addition, R.C. 2950.10 provides for victim notification of a sexual offender's registration and any subsequent change of residence.
 III. RETROACTIVE APPLICATION OF H.B. 180
A fundamental prerequisite to addressing violations of either the federal ex post facto clause or Ohio's retroactive clause is determining whether the law at issue is indeed retroactive. See Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph two of the syllabus ("The issue of whether a statute may constitutionally be applied retrospectively does not arise until there has been a prior determination that the General Assembly has specified that the statute so apply"); R.C. 1.48 (a statute is presumed to apply prospectively unless expressly made retroactive). Therefore, before this court considers Lyttle's arguments under either constitutional provision, this court must first determine whether the sexual predator classification, registration, verification, and notification provisions contained in H.B. 180 apply retroactively.
In this court's view, the Ohio General Assembly unequivocally expresses its intention to have the provisions of the sexual predator law apply retroactively in numerous provisions of R.C. Chapter 2950. R.C. 2950.01(G)(3) states:
 An offender is `adjudicated as being a sexual predator' if * * * [p]rior to the effective date of this section, the offender was convicted of or pleaded guilty to, and was sentenced for, a sexually oriented offense, the offender is imprisoned in a state correctional institution on or after the effective date of this section, and, prior to the offender's release from imprisonment, the court determines * * * that the offender is a sexual predator.
(Emphasis added).
The registration provisions apply "[r]egardless of when the sexually oriented offense was committed[.]" R.C. 2509.04(A). Sexual predators must verify their current residential address every ninety days "[r]egardless of when the sexually oriented offense was committed[.]" R.C. 2950.06(B)(1). Classification as a sexual predator is expressly mandated both for offenders who were convicted of or pleaded guilty to an offense "prior to the effective date" of R.C. 2950.09, see R.C. 2950.09(C)(1), and for those who are to be sentenced on or after the effective date of the statute "[r]egardless of when the sexually oriented offense was committed," see R.C. 2950.09(B). The community notification provisions apply to all sexual predators, which necessarily includes those who committed underlying offenses prior to the effective date of the statute. See R.C. 2950.11. Moreover, the seriousness of the penalty for failure to comply with the registration and verification provisions varies depending on "the most serious sexually oriented offense that was the basis of the registration, change of address notification, or address verification requirement that was violated * * *." R.C. 2950.99. (Emphasis added.) Again, this provision will also encompass offenses that were committed prior to the statute's enactment.
Despite these clear directives from the General Assembly, the state argues that the sexual predator law does not apply retroactively. The state claims that the sexual predator hearing is prospective because it addresses the future likelihood of recidivism. According to the state, any additional burdens, disabilities, or obligations adhering to the offender are based on a present determination that the offender is likely to re-offend in the future. See, e.g., State v. Hater (June 31, 1997), Preble C.P. No. 91-CR-6845, unreported. Cf., Kansas v. Hendricks, ___ U.S. ___, 117 S.Ct. 2072, 2086 (Kansas Sexually Violent Predator Act is not retroactive because involuntary confinement imposed subsequent to completion of original sentence is based upon a determination that offender currently suffers from mental abnormality and is likely to pose a future danger).[8]
There is logic in the state's argument; this court recognizes that a statute "is not made retroactive merely because it draws upon antecedent facts for its operation." See Cox v. Hart (1922),260 U.S. 427, 435, 43 S.Ct. 154, 157. Additionally, this court recognizes that classification as a sexual predator occurs only after a hearing that determines the offender's future risk of recidivism and threat to the community. However, the state overlooks the fact that the initial sexual predator classification hearing is triggered solely by the existence of a prior criminal conviction "[r]egardless of when the sexually oriented offense was committed." See, e.g., R.C. 2950.09(C)(1). This court will not ignore the nexus between the prior conviction and the invocation of R.C. Chapter 2950. Here, the prior conviction is more than simply an "antecedent fact;" a prior conviction is required to activate the entire legislative scheme.
Thus, this court concludes that the General Assembly intended the sexual predator law to operate retroactively, and the law is sufficiently retroactive to require further constitutional analysis. Therefore, this court will analyze the law in more detail under both the Ex Post Facto clause of the U.S. Constitution and the retroactive clause of the Ohio Constitution.
 IV. THE EX POST FACTO CLAUSE
The Ex Post Facto Clause forecloses retroactive application of a law that "inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull (1798), 3 U.S. (Dall.) 386, 390-92, 1 L.Ed. 648. "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some sort of `disadvantage,' * * * but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." California Dept. of Corrections v. Morales (1995), 514 U.S. 499, 506, 115 S.Ct. 1597,1602 fn. 3, citing Collins v. Youngblood (1990), 497 U.S. 37, 41,110 S.Ct. 2715, 2718.
 A. U.S. Supreme Court Decisions Discussing Punishment
The Supreme Court has not articulated a single "formula" for determining whether a statute or law violates the Ex Post Facto Clause, but has instead concluded that resolution of the issue is a matter of degree requiring case-by-case analysis. Morales at 506, 115 S.Ct. at 1603, citing Beazell v. Ohio, (1925),269 U.S. 167, 171, 46 S.Ct. 68, 69. The Court recently considered the issue of punishment in two significant cases, United States v. Ursery (1996), ___ U.S. ___, 116 S.Ct. 2135, and Kansas v. Hendricks (1997), ___ U.S. ___, 117 S.Ct. 2072. Discussion of these two cases is appropriate here.
In Ursery, the Supreme Court held that application of in rem civil forfeiture proceedings against property allegedly used to grow marijuana was not "punishment" for purposes of the Double Jeopardy Clause.[9] In reaching that conclusion, the Supreme Court employed the following two-part test:
 First, we ask whether Congress intended [the forfeiture] proceedings * * * to be criminal or civil. Second, we turn to consider whether the proceedings are so punitive in fact as to "persuade us that the forfeiture proceedings may not legitimately be viewed as civil in nature," despite Congress' intent.
Id. at 2147, quoting United States v. One Assortment of 89 Firearms (1984), 465 U.S. 354, 366, 104 S.Ct. 1099, 1107
(citation and brackets omitted).
Addressing the first part of its test, the Supreme Court found that Congress intended the forfeiture provisions to be civil in nature. Ursery at ___, 116 S.Ct. at 2147. The court noted that Congress classified the provisions as "civil," that the provisions were directed toward property not people, and that various procedures associated with the provisions indicated an intent to create a civil sanction. Id.
The Supreme Court went on to consider the second stage in its analysis, whether the forfeiture proceedings "are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." Id. at ___, 116 S.Ct. at 2148. Importantly, the Supreme Court concluded that only the "clearest proof" of a punitive effect could overwhelm a non-punitive legislative purpose. Id. See, also, Flemming v. Nestor (1960),363 U.S. 603, 617, 80 S.Ct. 1367, 1376 (only the "clearest proof" would suffice to establish the unconstitutionality of a statute based upon an argument that the "history and scope" of the statute revealed a punitive purpose).
The Supreme Court concluded that the forfeiture provisions did not have a punitive effect. The most important consideration for the court was that the forfeiture provisions serve non-punitive goals, for example, encouraging property owners to carefully manage their property and prevent its use in illegal activity. Ursery at 116 S.Ct. at 2148. The court also noted that in rem forfeiture sanctions have not historically been regarded as punishment, and that the provisions did not require the government to demonstrate scienter. Id. at ___,116 S.Ct. at 2149. Although the court recognized that the provisions could have a deterrent effect, the court noted that deterrence could serve both criminal and civil goals. Id. Finally, the Supreme Court explained that although the forfeiture provisions are tied to criminal activity, that alone could not render them punitive. Id.
Ursery considers punishment under the Double Jeopardy Clause; in Hendricks, however, the Supreme Court analyzed the punishment issue under both the Ex Post Facto Clause and the Double Jeopardy Clause. In Hendricks, the Supreme Court considered the constitutionality of Kansas' Sexually Violent Predator Act, which establishes procedures for the civil commitment of persons who, due to a "mental abnormality" or "personality disorder," are likely to engage in "predatory acts of sexual violence." Hendricks at ___, 117 S.Ct. at 2076. In addressing the issue, the Supreme Court applied essentially the same test for punishment it used in Ursery:
 We must initially ascertain whether the legislature meant the statute to establish "civil" proceedings. If so, we ordinarily defer to the legislature's stated intent.
* * *
 Although we recognize that a civil label is not always dispositive, we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.
Id. at ___, 117 S.Ct. at 2081-82 (citation, brackets, and quotation marks omitted).
The Supreme Court first found that the legislative intent behind the Kansas act was non-punitive. In addressing the second stage of its analysis, whether the law has a punitive effect despite any non-punitive intent, the Supreme Court noted that the Kansas act implicates neither of the two primary objectives of criminal punishment, retribution nor deterrence, and does not turn on a finding of scienter. Id. at ___, 117 S.Ct. at 2082. Moreover, the court held that imposition of an affirmative restraint and sanction traditionally regarded as punishment does not override the act's non-punitive nature. Id. at ___,117 S.Ct. at 2083. The court also rejected the argument that the state's use of procedural safeguards traditionally found in criminal trials rendered the proceeding criminal. Id. The court concluded that although the Kansas act provides for confinement of sexual predators in state institutions, the act does not impose punishment, and therefore does not violate either the Ex Post Facto or the Double Jeopardy Clauses of the Constitution. Id. at ___, 117 S.Ct. at 2085.
 B. Decisions Addressing Sexual Offender Statutes in Other Jurisdictions
Although the Supreme Court has never considered the constitutionality of a sexual predator law like H.B. 180, three federal appellate courts have recently concluded that similar laws do not amount to "punishment," and do not, therefore, violate the Ex Post Facto Clause. E.B. v. Verniero (C.A. 3, 1997),119 F.3d 1077; Russell v. Gregiore (C.A. 9, 1997), 124 F.3d 1079; Doe v. Pataki (C.A. 2, 1997), 120 F.3d 1263.
In Russell, the federal Ninth Circuit Court of Appeals adopted what it described as the "Ursery-Hendricks intent-effects test" to determine whether Washington's sexual offender registration and notification law imposed punishment. Russell at 1086. The circuit court first considered whether the legislature intended the law to be punitive, and then whether "the sanction is `so punitive' in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the legislature's intent." Russell at 1087. The Ninth Circuit Court of Appeals concluded that the Washington law did not violate the Ex Post Facto Clause.
The federal Second and Third Circuit Appellate Courts have also recently concluded that New Jersey's "Megan's Law" does not impose punishment. Verniero, 119 F.3d 1077; Roe, 125 F.3d 47; Doe v. Pataki, (C.A. 2, 1997), 120 F.3d 1263, 1265-66. The Verniero court wrote that once it determined the actual legislative purpose was remedial, it must uphold Megan's law against ex post facto challenge unless the law's objective purpose or its effect are sufficiently punitive to overcome a presumption favoring the legislative judgment. Id. at 1096.[10] Both circuit courts concluded that the registration and notification laws were constitutional.
Nationally, the majority of courts have considered the issue have concluded that similar sexual offender laws are constitutional. See, e.g., Doe v. Kelley (W.D.Mich., 1997),961 F. Supp. 1105; Doe v. Weld (D.Mass., 1996), 954 F. Supp. 425; W.P. v. Poritz, (D.N.J., 1996), 931 F. Supp. 1199; People v. Afrika (N.Y.Sup.Ct., 1996), 168 Misc.2d 618, 648 N.Y.S.2d 235; Opinion of the Justices to the Senate (1996), 423 Mass. 1201,668 N.E.2d 738; Doe v. Poritz (1995), 142 N.J. 1, 662 A.2d 367; State v. Costello (1994), 138 N.H. 587, 643 A.2d 531, 533; State v. Noble (1992), 171 Ariz. 171, 829 P.2d 1217, 1224; Kitze v. Commonwealth (1996), 23 Va. App. 213, 475 S.E.2d 830; State v. Manning (Minn.Ct.App., 1995), 532 N.W.2d 244. But, see, Roe v. Office of Adult Probation (D.Conn., 1996), 938 F. Supp. 1080; State v. Myers (1996), 260 Kan. 669, 923 P.2d 1024; Rowe v. Burton (D. Alaska, 1994), 884 F. Supp. 1372 (holding registration is punitive where dissemination of information will result).
 C. Ex Post Facto Analysis
In addressing the Ex Post Facto Clause, this court will apply the "intents-effects" test suggested by the Supreme Court's decisions in Ursery and Hendricks. Thus, this court will first consider the legislative intent behind the sexual predator law. The next and more difficult stage of the analysis involves consideration of the law's effects.
 1. Legislative Intent
There is no indication that the General Assembly enacted R.C. Chapter 2950 with an intent to impose punishment. To the contrary, the General Assembly has expressly declared that the intent of H.B. 180 is "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). The General Assembly also expressly states that its policy regarding the exchange and release of relevant information about "sexual predators and habitual sex offenders" to the general public is not punitive.[11] Id. Accordingly, this court concludes that the General Assembly did not intend to impose punishment with enactment of H.B. 180.
 2. Punitive Effect
While Lyttle acknowledges the non-punitive legislative intent behind the law, he argues that the statute, nevertheless, has a punitive effect. This court disagrees.
There are a number of factors this court can consider in gauging the punitive effect of Ohio's sexual predator law, however, any assertion that the law's punitive effect outweighs the General Assembly's non-punitive goals must involve the "clearest proof."[12] See Hendricks, ___ U.S. at ___,117 S.Ct. at 2081-82; Ursery, ___ U.S. at ___, 116 S.Ct. at 2148. Moreover, not all factors are equally weighted; the most important factor to consider is whether the law, "while perhaps having certain punitive aspects, serve[s] important nonpunitive goals." Id.
Here, Lyttle has not come forward with the "clearest proof" that the effect of the sexual predator law is so punitive that it overcomes the General Assembly's non-punitive intent. Most importantly, Ohio's sexual predator law serves an important non-punitive goal: alerting the community to the presence of dangerous sexual offenders adjudged likely to offend again. Moreover, unlike the Kansas act upheld in Hendricks, the provisions here impose no affirmative restraint or disability. There is also no element of scienter. See Hendricks at ___,117 S.Ct. at 2082.
Lyttle compares the consequences of his classification as a sexual predator to "historical shaming punishments" like branding, whipping, the pillory, and banishment. This court, however, agrees with the federal Ninth Circuit that such an analogy is far from "`clear proof' of an overwhelming punitive effect." Russell, 124 F.3d at 1092. As the federal Third Circuit recently stated: "Public shaming, humiliation and banishment all involve more than the dissemination of information * * *. Rather, these colonial practices inflicted punishment because they either physically held the person up before his or her fellow citizens for shaming or physically removed him or her from the community." Verniero at 1099. Moreover, historical analysis is not particularly helpful here because the classification and notification provisions of the law can be compared to both punitive and non-punitive antecedents. See Russell at 1092. For example, Ohio's sexual predator law is comparable to non-punitive historical antecedents including the use of "wanted posters," quarantine restrictions, and the dissemination of potentially damaging information to regulatory agencies or associations. Id.
This court recognizes that the sexual predator law may have a deterrent effect and that the law is tied to criminal activity, both attributes commonly associated with punishment. Deterrence can, however, serve both civil and criminal goals. Ursery at ___,116 S.Ct. at 2149 (citing Bennis v. Michigan (1996), ___ U.S. ___, ___, 116 S.Ct. 994, 1000. This court also finds that the law does not implicate the other primary objective of punishment, retribution, "because it neither labels the offender as more culpable than before (though his or her culpability may be more widely publicized)[.]" Russell at 1091. Moreover, the fact that the sexual predator law is linked to criminal activity is insufficient alone to render the sanction punitive. Ursery at ___, 116 S.Ct. at 2149.
To summarize this court's Ex Post Facto Clause analysis, this court concludes that the General Assembly clearly intended the sexual predator law to be regulatory, not punitive. Weighing all of the considerations discussed above, this court also concludes that the possible effects of the notification and registration provisions are not so punitive in fact that the law cannot be viewed as regulatory and non-punitive in nature. Since the classification scheme and attendant registration, verification, and notification provisions set forth in R.C. Chapter 2950 are not punitive, Lyttle's classification as a sexual predator under R.C. 2950.09(C) does not violate the Ex Post Facto Clause of the United States Constitution.
 V. THE RETROACTIVE CLAUSE OF THE OHIO CONSTITUTION
Section 28, Article II of the Ohio Constitution prohibits the general assembly from passing retroactive laws. In contrast to ex post facto laws which apply to penal statutes only, retroactive laws concern criminal and civil matters. 16A American Jurisprudence 2d (1979) 586, Constitutional Law, Section 636. Whereas ex post facto laws are statutes that "retroactively alter the definition of crimes or increase the punishment for criminal acts," see Collins v. Youngblood (1990), 497 U.S. 37, 43,110 S.Ct. 2715, 2717, retroactive laws include statutes which attach or impose a new disability as well as those imposing punishments. See State v. Thrower (1989), 62 Ohio App.3d 359; State ex rel. Corrigan v. Barnes (1982), 3 Ohio App.3d 40. Thus, the Ohio Constitution's prohibition against retroactive laws is broader than the federal constitutional prohibition under the Ex Post Facto clause.
 A. Substantive and Remedial Retrospective Laws
Despite the Ohio constitutional prohibition against retroactive legislation, a purely remedial statute does not violate Ohio Constitution Section 28, Article II, even if applied retroactively; only a retroactive law that affects "substantive" rights violates the retroactive clause. Van Fossen v. Babcock and Wilcox (1988), 36 Ohio St.3d 100, 107. A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations or liabilities as to a past transaction. Id. Remedial laws are those affecting only the remedy provided, and include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right. Id. Despite "the occasional substantive effect," laws that relate to procedures are ordinarily remedial in nature. Id. at 107-108. The supreme court has acknowledged, however, that it is doubtful if a perfect definition of a "substantive" or "remedial" law could be devised. State ex rel. Holdridge v. Indus. Comm. (1967), 11 Ohio St.2d 175,178.
As part of its "analytical framework" test, the federal Third Circuit Court of Appeals addressed the remedial nature of New Jersey's Megan's Law. Verniero, 119 F.3d 1077; Artway v. Attorney General of State of N.J. (C.A. 3, 1996), 81 F.3d 1235. That court's discussion in those cases is helpful to this court's analysis. In Artway, the federal court only considered the registration component of the New Jersey sex offender law.[13]
The federal court concluded that the purpose of registration is remedial. Id. at 1264 ("Registration is a common and long-standing regulatory technique with a remedial purpose"). The court reasoned:
 the solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register. Registration may allow officers to prevent future crimes by intervening in dangerous situations. * * * [T]he remedial purpose of knowing the whereabouts of sex offenders fully explains the registration provision * * *. And the means chosen — registration and law enforcement notification only — is not excessive in any way. Registration, therefore, is certainly "reasonably related" to a legitimate goal: allowing law enforcement to stay vigilant against possible re-abuse.
Id.
In Verniero, the federal court considered the remedial nature of the community notification component of Megan's Law. According to the court, the "primary sting" from classification and notification "comes by way of injury to what is denoted in constitutional parlance as reputational interests[, and] includes the burdens of isolation, harassment, loss of opportunities, and the myriad of more subtle ways in which one is treated differently by virtue of being known as a potentially dangerous sex offender." Verniero, 119 F.3d at 1102. The court went on to note, however, that "reputational interests" have not been accorded the same level of protection in our society as interests that have been found "implicit in the concept of ordered liberty." Id., citing Paul v. Davis (1976), 424 U.S. 693, 713,96 S.Ct. 1155, 1166 (police distribution of flyer with accused shoplifter's picture did not deprive that individual of any "liberty" or "property" rights). Such interests are not among the fundamental rights that may be interfered with "only by the most important of state interests." Id. at 1103.
Importantly, the Ohio Supreme Court has held that where no vested right has been created, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality." State ex rel Matz v. Brown (1988), 37 Ohio St.3d 279,281. In Matz, the statute at issue, R.C. 2743.60(E), prohibited persons who had been convicted of a felony within ten years from collecting a Victims of Crime Compensation Award. Matz was a crime victim who would have collected a compensation award except that he had been convicted of a felony within ten years. The felony conviction, however, occurred before the enactment of R.C.2743.60(E). On appeal to the supreme court, Matz argued that the law was retroactive because it attached a new disability to the felony which he had committed before the law was enacted. The supreme court rejected that argument, writing: "Except with regard to constitutional protections against ex post facto laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." Id. at 281-82. (Emphasis added.)
This court is convinced that Lyttle has "no reasonable expectation of finality" with regard to his past felonious conduct. See Id. Under the supreme court's reasoning in Matz, the sexual predator law attaches no new disability or burden to his conviction which is, arguably, a past transaction. Instead, this court concludes that the requirements the law imposes on Lyttle are remedial. But, see, State v. Cook (Aug. 7, 1997), Allen App. No. 1-97-21, unreported (R.C. Chapter 2950 imposes new obligations and duties that were not present under the previous version of R.C. Chapter 2950). Furthermore, the registration and verification provisions do not impose a burden that exceeds the necessary cost of accomplishing the goals underlying R.C. Chapter 2950. The registration and verification requirements are no more than a de minimis administrative requirement with a wholly remedial purpose and do not, therefore, violate the Ohio Constitution's retroactive clause.
All convicted felons face the possibility that their past acts will have future consequences. See Matz at 282. Dissemination of information about criminal activity always increases the possibility that those involved in the activity will suffer serious negative consequences. A conviction, however, is a public record, and an offender does not have a vested right to prohibit future determinations based in part upon that conviction. Likewise, an offender does not have a vested right in prohibiting the dissemination of public information concerning a prior conviction. The harsh consequences Lyttle expects from classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of his past actions.
Moreover, the classification and notification provisions are not excessive given the identified state interests involved. The classification hearing itself calls for a risk assessment based on objective criteria reasonably relevant to the individual degree of risk presented by the offender. Notification calls for the limited dispersal of a public record for the public's protection.
Having thoroughly considered the language and purpose of the sexual predator law, its consequences, and its potential impact, this court concludes that the requirements of the law are no more than a measured response to an identified problem — protecting the public from the risk of recidivism posed by certain sexual offenders. This court now holds that with regard to Lyttle, application of R.C. Chapter 2950 does not impair or take away any vested rights, affect an accrued substantive right, or impose new or additional burdens, duties, obligations or liabilities based upon his past conduct. Therefore, the law does not violate the Ohio constitutional prohibition of retroactive legislation.
The judgment of the trial court adjudicating Lyttle to be a sexual predator is affirmed.
WALSH and POWELL, JJ., concur.
[1] At the time, Lyttle had one previous conviction for gross sexual imposition.
[2] In 1994, the New Jersey legislature passed "Megan's Law" in response to the rape and murder of seven-year-old Megan Kanka by a twice-convicted sex offender who lived across the street from her. That year, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act to encourage states to adopt effective registration systems for released sex offenders. 42 U.S.C. § 14071. A 1996 amendment to the Wetterling Act, the federal "Megan's Law," now encourages states to establish community notification systems for violent sex offenders released or paroled from prison.
[3] The definition of "sexually oriented offense" includes, but is not limited to: rape (R.C. 2907.02), sexual battery (R.C.2907.03), gross sexual imposition (R.C. 2907.05), and felonious sexual penetration (former R.C. 2907.12). See R.C. 2950.01(D) (1).
[4] R.C. 2950.09(C)(1) provides, in part:
 (C)(1) if a person was convicted of * * * a sexually oriented offense prior to the effective date of this section, if the person was not sentenced for the offense on or after the effective date of this section, and if, on or after the effective date of this section, the offender is serving a term of imprisonment in a state correctional institution, prior to the offender's release from the term of imprisonment, the department of rehabilitation and correction shall determine whether to recommend that the offender be adjudicated as being a sexual predator.
[5] Relevant factors include: the offender's age, prior criminal record, the age of the victim, whether the offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, participation in available programs for sex offenders, any mental illness or disability of the offender, the nature of the offender's conduct, whether the offender displayed cruelty while committing the offense, and any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(1)(a)-(j).
[6] A sexual offender registration form must include a current residential address, the name and address of the offender's employer, if applicable, a photograph, and any other information required by the Criminal Identification and Investigation Bureau. R.C. 2950.04(C). Additionally a sexual predator registration form must include a specific declaration that the person has been adjudicated as a sexual predator, and the license plate number of each motor vehicle the offender owns or registers.
[7] "Specified geographical notification area" means the areas within which the attorney general, through rule making authority set forth in R.C. 2950.13, requires notice to be given to identified parties. R.C. 2950.11(A). Such written notice must contain the offender's name, address, the offense for which the offender was convicted, and a statement that the offender "has been adjudicated as being a sexual predator and that, as of the date of the notice, the court has not entered a determination that the offender no longer is a sexual predator." R.C.2950.11(B).
[8] The majority concluded that the Kansas act was not retroactive, noting that the act prescribed involuntary confinement based upon a determination that the person currently both suffers from a mental abnormality or personality disorder and is likely to pose a future danger to the public. Id. at ___,117 S.Ct. at 2086. The majority wrote "[t]o the extent that past behavior is taken into account, it is used, as noted above, solely for evidentiary purposes." Id. It concluded that the act does not criminalize conduct legal before its enactment, nor deprive the individual of any previously available defense. Id. Even the dissenting opinion suggested that the act's insistence on a prior crime did not make a critical difference in the analysis. Id. at ___, 117 S.Ct. at 2091. The dissent noted that such insistence may serve an important evidentiary function of screening out those whose past behavior does not demonstrate the existence of a mental problem or future danger. Id.
[9] Ursery construes the punitive nature of a provision imposed under the Double Jeopardy Clause of the U.S. Constitution, not the Ex Post Facto Clause. In that case, the Supreme Court cautioned against lifting a test for punishment from one constitutional provision and applying it to another. Ursery at ___, 116 S.Ct. at 2146. One year later, in Hendricks, however, the Court used the same test for punishment under the Double Jeopardy and Ex Post Facto Clauses, suggesting that the test for punishment is the same for both clauses. Hendricks at ___,117 S.Ct. at 2081-86.
[10] The Verniero court employed an "analytical framework" first developed in Artway v. Attorney General of New Jersey (C.A. 3 1996), 81 F.3d 1235, 1263, and held that the "measure must pass a three-prong analysis — (1) actual purpose, (2) objective purpose, and (3) effect — to constitute non-punishment." Id. at 1093. The first prong of the test, like the first prong of the Russell court's "intent-effects" test, focuses on the legislative intent behind the law. Id. The second inquiry considers "objective purpose," and focuses on operation of the law, and on whether analogous measures have traditionally been regarded as punishment. Id. The final prong examines whether the effects or "sting" of a measure is so harsh "as a matter of degree" that it constitutes punishment." Id.
[11] In R.C. 2950.02(A), the General Assembly also sets forth six findings that support its claim that the act is non-punitive.
[12] Appropriate factors to consider in gauging the punitive effects of a statute include:
 Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether alternative purposes to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.
Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168-69,83 S.Ct. 554, 567-68. The Mendoza-Martinez list of considerations is "helpful" but is "certainly neither exhaustive nor dispositive." United States v. Ward (1980), 448 U.S. 242, 249,100 S.Ct. 2636.
[13] [EDITORS' NOTE: FOOTNOTE 13 IS OMITTED FROM THE OFFICIAL COPY OF THIS DOCUMENT, THEREFORE IT IS NOT DISPLAYED IN THE ONLINE VERSION.]